450 So.2d 437 (1984)
SEISMIC PETROLEUM SERVICES, INC.
v.
Charles RYAN.
No. 54809.
Supreme Court of Mississippi.
May 9, 1984.
*438 Don A. McGraw, Jr., E. Gray Flora, III, Montgomery & Smith-Vaniz, Canton, Daniel J. O'Beirne, O'Beirne & Ball, Natchez, for appellant.
Robert C. Latham, Adams, Forman, Truly, Ward, Smith & Bramlette, Natchez, for appellee.
Before ROY NOBLE LEE, P.J., and BOWLING and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Seismic Petroleum Services, Inc. [Seismic] has appealed from a judgment entered against it in the Circuit Court of Adams County, Honorable Edwin E. Benoist, Jr., presiding, in favor of Charles M. Ryan for actual, statutory and punitive damages in the aggregate amount of $15,980, as a result of a trespass suit. Seismic assigns the following errors in the trial below:
(1) The lower court erred in overruling appellant's motion for judgment notwithstanding the verdict and/or alternatively for remittitur, and/or alternatively, for a new trial.
(2) The lower court erred in denying appellant's motion for the jury to view the subject property.
(3) The lower court erred in allowing the issues of statutory damages and punitive damages to go to the jury and should have given Instructions No. D-1 and D-2.
Evidence favorable to Ryan indicates that prior to September 15, 1981, Seismic's representatives contacted him to obtain permission for a seismograph crew to run a seismic line over approximately one-half *439 (1/2) mile of the property. Ryan authorized the representative to enter the land for the purpose of a survey or determination where Seismic desired to run the line, but admonished him not to run the line without obtaining Ryan's permission to do so.
The representatives never contacted him again or obtained a permit to run the line. Ryan discovered that the Seismic crew was on the property with its machinery and had started on the seismic line, and he sent his son to warn them not to continue the work without Ryan's express permission. On September 15, 1981, the son, Danny Ryan, told the crewmen that they were trespassing on the property and that they needed to talk with appellee Ryan about it. Subsequent to that date, young Ryan saw evidence of cable and equipment indicating that the crew had come back upon the property, and on September 28, 1981, at the request of his father, Danny Ryan complained to Deputy Sheriff Max Marler about the trespass. The deputy went to the property and arrested two Seismic employees for trespassing. Seismic still did not obtain a permit to go upon the property.
The two employees, who were charged with willful trespass, were released on bond obtained by the Seismic foreman and were told by the deputy not to go back on the property. Deputy Marler stated that on the next day he received a call complaining that seismograph employees had been back upon the property and, after Marler inspected the same, he found that additional equipment had been placed upon the property and wire had been laid since the previous day.
Seismic contended, and introduced evidence to the effect, that it was acting in good faith in going upon the property. Kenneth Coziar, vice president and part owner of Seismic, stated that, if the matter had come to his attention he would have talked to Ryan personally and could have moved the line around Ryan's property and that Seismic thought it had a verbal permit to go upon the Ryan property. Seismic admitted that it had at least three (3) separate crews upon Ryan's property at different times.
Edward H. Hamby, a professional forester, testified for Seismic that he inspected the property after the alleged trespass and found that there were 62 damaged trees, which included 37 one-inch trees, 11 two-inch trees, 13 four-inch trees, and one ten-inch tree with a scar. He estimated that a generous value of the damage was around 17 to 22 cords of wood of the lowest value specie for pulpwood with a value of about $22.00. Hamby made photographs of the property, the line, and the damage, and fourteen (14) photographs were introduced in evidence.[1]
In rebuttal, Tom Middleton, registered forester, testified on behalf of Ryan. On October 30, 1982, he viewed the property to assess damage done by the seismograph crews, and stated that he found 201 trees cut and destroyed; that seventy-five percent (75%) were of commercial value, mostly red oak, sweet gum, hickory, and sassafras, and twenty-five percent (25%) were of "junk" species; that the path of the line cut was an average of six (6) feet wide; and that he found evidence of preparation made for drilling holes.
The lower court sustained a motion for partial directed verdict on actual damages, limited the amount to $180.00, and overruled motions for directed verdict on statutory damages and punitive damages. The jury returned a verdict finding that Seismic willfully trespassed upon the Ryan property, and awarded damages in the amount of $180.00 actual damages, $3,300 statutory damages (60 trees at $55.00 per tree), and $12,500 in punitive damages, for total damages of $15,980.
Motion for judgment notwithstanding the verdict, for remittitur and for a new trial was overruled.

*440 I.

THE LOWER COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR ALTERNATIVELY FOR REMITTITUR, AND/OR ALTERNATIVELY FOR A NEW TRIAL.
The appellant contends that it acted in good faith in going upon the lands of appellee and running the seismograph line; that it did not willfully cut trees on the property and did not commit a willful trespass; and that the evidence did not support a verdict for statutory and punitive damages. Appellant cites the case of Strawbridge v. Day, 232 Miss. 42, 98 So.2d 122 (1957), where this Court said:
The phrase "good faith", as used in a statute such as we have here, denotes honesty of purpose, freedom from intention to defraud or to deprive others of rights or property to which in equity and good conscience they are entitled. In order to avoid liability for the statutory penalty in a case of this kind the defendant is not required to prove freedom from negligence, but only that the trespass was not willful, or did not result from wantonness or recklessness. [232 Miss. at 52-53, 98 So.2d at 128]
Strawbridge correctly states the law on this type case, viz, that the trespass was not willful or did not result from wantonness or recklessness in order not to come within the statute. In the case sub judice, the evidence is overwhelming that the Seismic employees went upon appellee's land without permission and in violation of appellee's express admonition for them not to run a line until he had given his permission; that the employees went upon the land several times in complete and willful disregard of those instructions; that they took lines, heavy equipment and material for running a line approximately one-half (1/2) mile across the property; that two of the employees were arrested and charged with trespass, and, subsequently, other Seismic employees again went upon the land without permission; and that the evidence made out a case of willful, wanton and deliberate trespass upon the appellee's property.
When a person is charged with committing a willful and wanton trespass and cutting trees upon another's property without permission, the standard by which to measure him is whether or not a reasonable man under like circumstances would have gone upon the property, committed a trespass thereon and would have cut trees of the property owner.
The jury answers the question as to whether or not punitive damages should be imposed and the amount thereof. The statutory penalty for cutting trees and punitive damages for trespass upon the property bear a different relation and a different burden of proof. In an action for statutory damages, the law provides:
To establish the right of the owner prima facie, to recover under the provisions of this section, it shall not be required of the owner to show, by a preponderance of the proof, that the defendant or his agents or employees, acting under the command or consent of their principal, wilfully, recklessly, and knowingly cut such trees, but it shall only be required of the owner to show that such timber belonged to such owner, and that such timber was cut by the defendant, his agents or employees, without the consent of the owner, provided, the defendant may establish good faith as an affirmative defense as to the statutory penalty. Miss. Code Ann. § 95-5-3 (Supp. 1983).
In an action for punitive damages because of trespass and damage upon real property, the proof must show that the trespass was willful, grossly negligent or wanton and punitive damages may be allowed as punishment for that trespass. In the present case, the issue of statutory damages and punitive damages for trespass were both submitted to the jury on *441 proper instructions. In Day v. Hamilton, 237 Miss. 472, 478, 115 So.2d 300, 303 (1959), discussing statutory and punitive damages, the Court said:
Appellant asserts that the statutory remedy creating a specific penalty for cutting trees is exclusive, insofar as punitive or exemplary damages are concerned. Miss.Code 1942, Secs. 1074-1087. These statutes do not indicate any legislative intent that the statutory penalty would be the exclusive remedy. In fact, Sec. 1087 indicates the contrary. Statutes are not to be understood as effecting a change in the common law beyond that which is clearly indicated. 82 C.J.S. Statutes § 363; Burns v. Allen, 1947, 202 Miss. 240, 31 So.2d 125; Sanders v. Neely, 1944, 197 Miss. 66, 82, 19 So.2d 424. Appellant concedes that there are no decisions supporting his argument of an exclusive remedy under the statutes. Since they do not repeal by their terms the common-law remedy of the right to punitive, as well as actual, damages for a trespass resulting in the cutting of trees, the common-law remedy remains unaffected.
The principle was restated in Georgia-Pacific Corp. v. Blakeney, 353 So.2d 769 (Miss. 1978), where we said that the rule is established that when the Court considers whether the defendant is entitled to a judgment as a matter of law, the Court considers the evidence in the light most favorable to plaintiff, disregards any evidence on the part of defendant in conflict with that favorable to the plaintiff, and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for the plaintiff, the jury verdict should not be disturbed. See also Gee v. Hawkins, 402 So.2d 825 (Miss. 1981) and Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975).
We think that all questions of damages constituted questions for the jury and we cannot say that the verdict was not supported by the evidence.

II.

THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION FOR THE JURY TO REVIEW THE SUBJECT PROPERTY.
At this point, we note that the appellant introduced fourteen (14) photographs in evidence. They showed fairly and accurately the area involved in the alleged trespass and had probative value. The question of viewing property is a matter within the sound discretion of the trial judge. In National Box Company v. Bradley, 171 Miss. 15, 28, 157 So. 91, 93 (1934), the Court said:
[A] request for a view should never be granted unless it appears reasonably certain that it will be of essential aid, not merely of some aid, to the jury in reaching a correct verdict, and that it is distinctly impracticable and inefficient to present the material elements to the jury by photographs, diagrams, maps, measurements and the like.
We are of the opinion that the evidence and exhibits fully disclosed the condition of the property and that the trial judge did not abuse his discretion in overruling the motion for the jury to view the premises.

III.

THE LOWER COURT ERRED IN ALLOWING THE ISSUES OF STATUTORY DAMAGES AND PUNITIVE DAMAGES TO GO TO THE JURY AND SHOULD HAVE GIVEN INSTRUCTION NO. D-1 AND JURY INSTRUCTION NO. D-2.
The Instructions D-1 and D-2 were peremptory instructions against the statutory penalty and punitive damages. D-1 instructed that appellee could not recover the statutory penalty of damages for the destruction of the trees involved and D-2 instructed the jury that as a matter of law appellee was not entitled to recover punitive damages from the appellant. Clearly, those instructions were improper, under the evidence, and the lower court correctly refused them. In addition, the lower court granted appellant Instructions D-11 and *442 D-12 which told the jury that in order to return a verdict for statutory damages, that the appellee was required to prove by a preponderance of the evidence that the appellant was guilty of willful trespass or was grossly negligent or indifferent or lacked good faith so clearly as to be equivalent of willfulness; and that appellee was not entitled to recover statutory or punitive damages unless appellee had proved by a preponderance of the evidence that the appellant was guilty of willful wrong or gross negligence. The issue of willful or wanton trespass was put squarely before the jury, and there is no merit in this assignment.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Ryan had a count of 270 damaged trees taken soon after the alleged trespass.